647 P.2d 814

Gloyd L. BENNETT and Geraldine S. Bennett, husband and wife, Plaintiffs-Appellants,

v.

Douglas L. BLISS and Sharon M. Bliss, husband and wife, Lynn P. Wallace and Kaye Wallace, husband and wife, Dale Peterson and Ileene L. Peterson, husband and wife, and Clarence A. Richards and Ruth M. Richards, husband and wife, Defendants-Respondents.

No. 13665.

Court of Appeals of Idaho.

June 29, 1982.

John B. Kugler, Pocatello, for plaintiffs-appellants.

Clyde G. Nelson, Soda Springs, for defendants-respondents, Clarence A. Richards and Ruth M. Richards.

Randall C. Budge of Racine, Huntley & Olson, Chartered, Pocatello, for defendants-respondents, Douglas L. Bliss and Sharon M. Bliss, Lynn P. Wallace and and Kaye Wallace.

SWANSTROM, Judge.

The Bennetts, as sellers, brought this suit on a land sales contract, contending the purchasers were in default. The district court granted the summary judgment motions of respondents, the purchasers, and denied Bennett's motion for summary judgment. Bennett's appeal raises two issues: First, did the court err by granting the purchasers an extension of time for the hearing on Bennett's motion for summary judgment? Second, did the district court properly rule on the respective requests for summary judgment? We affirm the summary judgment granted to the purchasers.

In 1976 Bennett sold the farm to Bliss and Wallace on a contract. Bliss and Wallace subsequently sold the property to the Petersons. Petersons then sold the property to Richards. Each of these purchasers held the property subject to the Bennett contract which called for an annual payment of $16,749.10 to be paid on January 5th of each year. The payment due January 5, 1979, was not made. On the sixth of February Bennett sent each of the purchasers a notice of default, specifying the failure to make the annual payment. The notice of default also stated: "The sellers do hereby declare all unpaid payments and the entire balance of principal, interest, penalties, fees, and costs as due and payable forthwith." Within five days of receiving the notice of default each purchaser, for themselves or through another, tendered to the escrow holder bank the annual payment due plus interest, costs, and attorney fees. Bennett instructed the bank to refuse these offers of payment.

The first count of Bennett's complaint sought payment for the entire balance ow-

ing on the contract. The second count sought liquidated damages, possession of the property, and a decree quieting title. The third count was directed at Richards and claimed damages for wrongful detainer and misrepresentation by Richards concerning Richards' attempt to obtain alternative financing.

Bennett submitted affidavits and answers to interrogatories to the district court and moved for summary judgment. This motion was set for hearing, but the purchasers moved for an extension of time to conduct further discovery. This motion was granted. All the purchasers subsequently moved for summary judgment, and after a hearing and oral arguments, the district court granted the purchasers' motions for summary judgment and denied Bennett's motion for summary judgment.

### I.

■ Bennett contends that the court erred by giving Richards a continuance before hearing Bennett's motion for summary judgment, because I.R.C.P. 56 does not require that an answer be filed or discovery be completed before such a motion is filed. We disagree. A motion for an extension of time to file additional affidavits, depositions, and interrogatories in opposition to a motion for summary judgment lies within the discretion of the district court. *Johnston v. Pascoe*, 100 Idaho 414, 418–19, 599 P.2d 985, 989–90 (1979). The district court's order reflects sound reasoning for granting a continuance for purposes of allowing discovery. We do not find an abuse of discretion.

■ Bennett also contends that the district court erred in considering Richards' motions for summary judgment, because it was not served at least ten days prior to the hearing. I.R.C.P. 56(c). However, the record does not reflect that any objection was made to the court's considering Richards' motion, and any error was thereby waived. *Rosenberg v. Toetly*, 94 Idaho 413, 421, 489 P.2d 446, 454 (1971); *Koch v. Elkins*, 71 Idaho 50, 54, 225 P.2d 457, 459 (1950).

### II.

Bennett contends that the district court erred in granting summary judgment to the purchasers since genuine issues of material facts existed. We disagree.

■ Summary judgment is appropriate if there is no genuine issue of material fact after the pleadings, depositions, admissions, and affidavits have been construed in a light most favorable to the opposing party. *Palmer v. Idaho Bank & Trust of Kooskia*, 100 Idaho 642, 644, 603 P.2d 597, 599 (1979); I.R.C.P. 56(c). An important element here is whether a factual dispute addresses a material issue. "A material issue arises only when the matter *placed in dispute by the pleadings* is such a point as will determine the cause." (Emphasis added). 71 C.J.S. *Pleading* § 514 (1951 & Supp. 1981).

Concerning default, the only issue raised by the pleadings was the failure to make timely payment. Therefore, various other defaults alleged in a supplemental affidavit, filed by Bennett the day of the hearing, were not material under the existing state of the pleadings. Only those factual disputes concerning when the payment was made or tendered, and when payment was due, were material. In the summary judgment proceedings the district court properly limited its consideration to these disputes, and our review on appeal is similarily limited. From the record it appears that no dispute exists as to when the payment was tendered. A dispute does exist as to when the payment had to be made.

■ Where a contract is clear and unambiguous, its meaning and legal effect are questions of law for determination by the court. *Clark v. St. Paul Prop. & Liab. Ins. Cos.*, 102 Idaho 756, 757, 639 P.2d 454, 455 (1981); *Beal v. Mars Larsen Ranch Corp. Inc.*, 99 Idaho 662, 668, 586 P.2d 1378, 1384 (1978). However, where the terms of a contract are ambiguous, the interpretation and meaning of those terms are questions of fact and extrinsic evidence may be considered in attempting to arrive at the true intent of the parties. *Bergkamp v. Carrico*, 101 Idaho 365, 367, 613 P.2d 376, 378 (1980).

The principal issue here involves interpreting the default provisions of Bennett's 1976 land sales contract. We, like the district judge, must search for the meaning in the legalese jungle of paragraph seventeen. It is comprised of 250 words, in only two sentences, as follows:

In case of the failure of the Buyer to pay all payments promptly when due or within thirty (30) days thereafter, whether of principal, interest, insurance premiums, taxes, or assessments, or in case of Buyer's failure to perform any other covenant or agreement herein promptly when the same should be performed or within five (5) days from the date notice in writing from Seller to Buyer is given personally or by registered or certified mail, at the election of the Seller, specifying any default or defaults by Buyer, Seller may terminate this Agreement and be released from all obligations hereunder, whereupon, all payments made and all improvements erected thereon shall be forfeited to the Seller as and for liquidated damages and as rental for said premises, and Seller may retake possession of said property; or, at the option of the Seller, Seller may specifically enforce the provisions of this Agreement by an appropriate action, or Seller may sue for the purchase price in any competent court, and for this purpose may declare all unpaid payments immediately due and payable and may treat this Contract as a note and mortgage and sue to foreclose the same in the manner provided for foreclosure of mortgages in the State of Idaho. In the event said payments are not made within said thirty-day period or such notice remains uncomplied with for five days, the Escrow Holder, on written demand by Seller is authorized to return all documents in escrow to Seller without further notice to Buyer.

The primary objective in the construction of a contract is to determine the intentions of the parties. In order to accomplish that objective the contract must be construed as a whole and considered in its entirety. *Beal v. Mars Larsen Ranch Corp., Inc.*, 99 Idaho at 668, 586 P.2d at 1386. In this regard paragraphs eight and eleven of the land sales contract are instructive. Paragraph eight reads as follows:

It is understood and agreed that if the Seller accepts payment from the Buyer on this Contract or *if Buyer makes payments in amounts less than according to the terms herein mentioned, whether before or after notice of default and election of remedy*, then, by so doing, it will in no way alter the terms of this Contract as to the forfeiture hereinafter stipulated or as to any other remedies of the Seller. (Emphasis added)

Paragraph eleven provides that:

In the event Buyer shall default in payment of any insurance premiums, taxes, or assessments as herein provided, the Seller may, at Seller's option, pay said taxes, insurance premiums, or assessments, or either of them; and if Seller elects so to do, then the Buyer agrees to repay the Seller upon demand all such sums so advanced and paid by Seller, together with interest thereon from the date of payment of said sums at the rate of 1% per month until paid. *The grace period provided in paragraph 17 herein shall commence the date such demand is made*, and failure to pay according to said demand within said time shall make available to Seller all remedies against Buyer provided in said paragraph. (Emphasis added)

The district court found that the provision in paragraph eleven, stating that "[t]he grace period in paragraph seventeen herein shall commence the date such demand is made," negated Bennett's contention that default occurred automatically upon failure to make payments within thirty days of the due date. Similarly, the court construed paragraph eight as allowing a payment to be made after a notice of default was given.

We believe that the district court's interpretation of the contract is reasonable. Moreover, we believe it is the only reasonable interpretation.

In *Clark v. Paddock*, 24 Idaho 142, 132 P. 795 (1913), the court had to construe conflicting language in a note and mortgage as to whether the mortgagee had to give the mortgagor notice of his intent to accelerate the debt. The court held as follows:

Stipulations of this kind for the acceleration of the maturity of a debt should be so construed, if possible, and consistent with the language employed, as to give the protection intended thereby to both the debtor and the creditor.

24 Idaho at 150, 132 P. at 797; *accord Allen v. Ruby Company*, 87 Idaho 1, 11, 389 P.2d 581, 587 (1964).

Application of the rule in *Clark* and *Allen* to the facts of this case lends additional support for the interpretation of the contract language which requires sellers to give the five-day notice. Such a requirement harms neither party, nor takes away any protection afforded to seller by the contract. A contrary construction, however, would be only in the interest of the seller. Here, Bennetts had given their consent for successive purchasers to "take over" the original contract. The record shows Bliss and Wallace, the initial purchasers, are still bound by the contract. Each of the purchasers has some apparent interest or equity which could be lost if Bennett successfully declares a default because of Richards' failure to timely perform. Interpreting the contract so as not to require any notice to the initial purchasers, under such circumstances, offers no protection to the purchasers. Nothing in the record nor in the arguments made to this court compels such an interpretation that would be contrary to the rule followed in *Clark* and *Allen*.

In addition to the language of paragraphs eight and eleven which was considered by the district judge in his search for the meaning of paragraph seventeen, we believe the final paragraph of the contract is also important. That paragraph is part of the statement of responsibilities of the escrow holder. It says:

In the event Buyer defaults under the terms of this Agreement and such default shall continue for the period herein provided, *and* Seller shall give the notice herein required, then, in that event, Seller may demand from the Escrow Holder and the Escrow Holder shall forthwith deliver to Seller the documents deposited herewith. [Emphasis added.]

This sentence is consistent with the district judge's interpretation of the contract, and is inconsistent with the interpretation sought by Bennett. It is also inconsistent with the use of the disjunctive "or" in the last sentence of paragraph seventeen.

It is significant that this last quoted paragraph makes no distinction between defaults that require a five-day notice and defaults that do not require a five-day notice. This final paragraph makes it clear, in respect to *any* default, that before seller was entitled to demand and receive any escrowed documents the seller must first establish that buyer had defaulted, that any grace period allowed had expired, *and* that seller had given the five-day notice to buyer.

Because of our view that the ambiguities of paragraph seventeen can be resolved in only one reasonable way by an examination confined to the contract itself, we believe that summary judgment was proper. The following cases, where it was held that summary judgment was not proper, can be distinguished. *Pocatello Ind. Park Co. v. Steel West, Inc.*, 101 Idaho 783, 789, 621 P.2d 399, 405 (1980); *Bergkamp v. Carrico, supra*; *Boesiger v. DeModena*, 88 Idaho 337, 346, 399 P.2d 635, 640 (1965). In each of these cases the contract was susceptible of more than one reasonable interpretation, and extrinsic evidence was required to determine the parties' intentions.

From our examination of the pleadings it appears that all three counts of Bennett's complaint are founded upon the alleged failure of the purchasers to make timely payment of the installment due in January, 1979. As Bennett did not prevail on the issue of that alleged default, the summary judgment order dismissing all three counts of Bennett's complaint was proper. We therefore affirm the summary judgment.

■ All parties request attorney fees be awarded on appeal, either under I.C. § 12–120(2), or under paragraph eighteen of the contract. We deem I.C. § 12–120(2) inapplicable on its face to a contract for the sale of real estate. Paragraph eighteen of the contract provides for payment of attorney fees by a "defaulting party." Bennett is not a defaulting party in this case. The purchasers, under our holding today, cured their default before litigation was commenced. Accordingly, we award no attorney fees on appeal. Costs to respondents, purchasers.

WALTERS, C. J., and BURNETT, J., concur.